GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt (SBN 208552)
    jkrevitt@gibsondunn.com
200 Park Avenue, 47th Floor
New York, New York 10166
Tel: (212) 351-4000
Fax:  (212) 351-4035

GIBSON, DUNN & CRUTCHER LLP
Frederick S. Chung (SBN 183337)
    fchung@gibsondunn.com
Stuart M. Rosenberg (SBN 239926)
    srosenberg@gibsondunn.com
Neema Jalali (SBN 245424)
    njalali@gibsondunn.com
Alison Watkins (SBN 253023)
    awatkins@gibsondunn.com
Quincy Lu (SBN 267249)
    qlu@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304
Tel:  (650) 849-5300
Fax:  (650) 849-5333

GIBSON, DUNN & CRUTCHER LLP
Wayne M. Barsky (SBN 116731)
    wbarsky@gibsondunn.com
Jason C. Lo (SBN 219030)
    jlo@gibsondunn.com
2029 Century Park East
Los Angeles, CA 90067-3026
Tel: (310) 552-8500
Fax: (310) 551-8741

*Attorneys for Defendant Fitbit, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ALIPHCOM D/B/A JAWBONE and BODYMEDIA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> FITBIT, INC., <br><br> Defendant. | CASE NO. 3:15-cv-2579 <br><br> **FITBIT'S LIMITED OPPOSITION TO PLAINTIFFS' MOTION TO STAY** <br><br> **Hearing:** <br> Date:       November 12, 2015 <br> Time:       2:00 PM <br> Place:      Courtroom 15 <br> Judge:     Haywood S. Gilliam, Jr. |

Gibson, Dunn &
Crutcher LLP

## I. INTRODUCTION

Failing in its effort to compete in the marketplace with industry-leader Fitbit, and just days before Fitbit's initial public offering, plaintiff Jawbone filed this action alleging patent infringement on June 10, 2015. Now, four months later—in response to Fitbit's notice that it would be filing a motion for judgment on the pleadings challenging Jawbone's patents under Section 101 of the Patent Act—Jawbone seeks to stay the very district court action that it chose to file in favor of the ITC action it also chose to file.

Jawbone's motion fails to cite—and we have been unable to find—even a single case in which a plaintiff has unilaterally moved (let alone successfully) for a stay of its own district court action in favor of its ITC action. Jawbone's motion argues only that permitting the lawsuit it filed to go forward in parallel with its ITC action "will unnecessarily waste the parties' and judicial resources," that Fitbit [*sic*] is "seeking duplicative litigation," and that Fitbit should just make its Section 101 challenge in the ITC while this case sits dormant on the Court's docket. (Mot. at 2.) Jawbone's argument is entirely lacking in merit and should be rejected.

First, by this limited opposition, Fitbit requests only that the Court take up the stay issue, if at all, after it has ruled on Fitbit's motion for judgment on the pleadings. Fitbit's motion is set for hearing on November 19, 2015, and is directed to a threshold issue raised by Jawbone's lawsuit: whether Jawbone's patents pass muster under Section 101 of the Patent Act. Neither discovery nor claim construction is required to adjudicate that motion, and thus the parade of self-inflicted horribles on which Jawbone seeks to rely is no more than hyperbole.

Second, while Jawbone is correct that there is no legal restriction preventing Fitbit from raising a Section 101 challenge in the ITC, neither is there any track record whatsoever of the ITC adjudicating Section 101 challenges. Nor does the ITC have a procedure akin to Rule 12, where parties are able—and expected—to make threshold challenges to the pleadings. As a practical matter, if this Court does not consider Fitbit's threshold challenge to Jawbone's patents now, it is unlikely that this Court will do so for the next 2-3 years that Jawbone's ITC case will likely be pending before the ALJ, the Commission, and the Federal Circuit.

Gibson, Dunn & Crutcher LLP

FITBIT'S LIMITED OPPOSITION TO PLAINTIFFS' MOTION TO STAY – CASE NO. 3:15-cv-2579

Finally, the process—and constrained resources—of a federal court should not be invoked lightly.  Jawbone knew that it would be filing an ITC action when it chose to invoke the jurisdiction of this Court.  Having done so, Jawbone is in no position to deny Fitbit the opportunity expressly provided by Rule 12 to challenge the sufficiency of Jawbone's pleading and to remove the cloud Jawbone has placed over Fitbit's business and products.  It is at best unfair for Jawbone to expect that it can invoke the jurisdiction of this Court for tactical reasons, and then insulate its claims from review by this Court for what will likely be a period of years.  Simply put, Jawbone should not have filed this action if it had no intention of prosecuting it diligently and in good faith.

## II.    STATEMENT OF FACTS

On June 10, 2015—days before Fitbit's planned IPO—Plaintiffs Aliphcom D/B/A Jawbone and Bodymedia, Inc. ("Jawbone") brought this infringement suit against Defendant Fitbit, Inc. ("Fitbit").  (Dkt. 1 (Compl.).[1])  Jawbone's original Complaint asserted three patents, U.S. Patent Nos. 8,073,707, 8,398,546, and 8,446,275.  (Id.)  Additionally, Jawbone stated in its Complaint that it intended to bring an infringement suit in the International Trade Commission over "some or all of the patents and accused products asserted in this district court action."  (Dkt. 1 at 1 n.1.)

On July 3, 2015, more than three weeks after bringing suit and more than two weeks after Fitbit's IPO, Jawbone filed an Amended Complaint in which it asserted three additional patents, U.S. Patent Nos. 8,529,811, 8,793,522, and 8,961,413.  (Dkt. 29 (Am. Compl.).)  Then, on July 7, 2015, as promised in its original Complaint, Jawbone filed a complaint in the ITC against Fitbit under 19 U.S.C. § 1337, alleging infringement of the same six patents as in the Amended Complaint here.  *See* 80 Fed. Reg. 162 (Aug. 21, 2015).  The ITC instituted the investigation on August 17, 2015.  *Id.*

Hours after Fitbit indicated that it intended to file a Rule 12(c) motion challenging the subject matter eligibility of one or more of Jawbone's patents in this Court, Jawbone stated that it would be seeking a stay of this action, adding three pages of legal argument to the joint CMC statement.  (*See*

---

[1]  Jawbone's motion for a stay erroneously states that the original Complaint was filed June 6, 2015.

1   Ex. A (Sept. 21, 2015, e-mail from F. Chung);[2] Ex. B (Sept. 21, 2015, e-mail from T. Lusztig).)  On

2   September 29, 2015, at the Case Management Conference, the Court indicated that if Jawbone

3   wished to request a stay, the request should be made in a noticed motion.  (Dkt. 46.)  On October 2,

4   2015, Jawbone filed the present motion.  (Dkt. 47 ("Mot.").)

5            On October 9, 2015, Fitbit filed its Rule 12(c) motion on the ground that three asserted

6   patents in this suit claim unpatentable subject matter under 35 U.S.C. § 101.  (Dkt. 48.)  A hearing on

7   Fitbit's motion is currently scheduled to take place on November 19, 2015, a week after the

8   scheduled hearing on Jawbone's stay motion.  (*See id.*; Mot.)

9   **III.   LEGAL AUTHORITY**

10           Jawbone spills several pages of ink discussing the mandatory stay provision, 28 U.S.C.

11  § 1659, and Congress's purported rationales behind that statute.  (*See* Mot. at 1-2, 5-6.)  This statute

12  is wholly inapplicable here, however, because only Fitbit, the respondent in the co-pending ITC

13  investigation, had a right to obtain a mandatory stay of this case.  *See* 28 U.S.C. § 1659(a).  Had

14  Congress intended to rule out parallel proceedings in the ITC and the district court, it could have

15  done so.  Had Congress intended to provide either party with a right to a mandatory stay, it could

16  have done so.  Instead, Congress chose to provide an infringement defendant—and only the

17  defendant—with the statutory right to an automatic stay.  *Cf.* AIA § 18(b)(1) (allowing either party to

18  seek a stay of a civil action during a covered business method patent review); *see also Benefit*

19  *Funding Sys. LLC v. Advance Am., Cash Advance Ctrs., Inc.*, C.A. No. 12-801-LPS, 2013 WL

20  3296230, at *2 n.3 (D. Del. June 28, 2013) (noting differences between AIA § 18(b)(1) and 28 U.S.C.

21  § 1659).

22           Without the ability to invoke a mandatory stay, Jawbone may only request a discretionary

23  stay.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Under *Landis*, a "party seeking a

24  discretionary stay bears the burden of proving that a stay is warranted."  *Zenith Elecs. LLC v. Sony*

25  *Corp.*, No. C 11-02439 WHA, 2011 WL 2982377, at *2 (N.D. Cal. July 22, 2011).  In considering

26  

27  _____

28  [2]  Exhibits referenced in this Opposition are exhibits to the Declaration of Frederick Chung, filed
    herewith in support of this Opposition.

whether to grant a discretionary stay under *Landis*, a court considers, *inter alia*, (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted).

In addition, Jawbone's request for a discretionary stay of its own case appears to be unprecedented. Jawbone does not cite a single case in which a plaintiff obtained a stay of its own civil suit over a defendant's objection. (*See generally* Mot.) Nor has Fitbit been able to find a case in which a patentee unilaterally obtained a stay of its own district court case in favor of its own, co-pending ITC investigation, as Jawbone seeks to do here. The many cases that Jawbone does cite involve stays being sought by defendants. Jawbone's cases are inapposite because, unlike a plaintiff, a defendant neither has chosen to bring the suit nor has the power to dismiss it. *See Avago Techs. U.S. Inc. v. IPtronics, Inc.*, No. 5:10-CV-02863-EJD, 2013 WL 623042, at *3 (N.D. Cal. February 15, 2013) (holding that, in the stay analysis, the harm to plaintiff "is minimal and largely of [its] own making," as it "chose to file [the] ITC investigation" and district court litigation); Fed. R. Civ. P. 41(a).

## IV.   THIS CASE SHOULD NOT BE STAYED BEFORE THE COURT RULES ON FITBIT'S THRESHOLD RULE 12 MOTION

By this limited opposition, Fitbit requests only that the Court consider the stay issue, if at all, after the Court has ruled on a critical threshold issue: Fitbit's pending motion for judgment on the pleadings under Section 101. Jawbone does not even attempt to explain why Fitbit's attack on Jawbone's pleadings, which is set for hearing on November 19 and may eliminate half the patents being asserted in both this case and the ITC investigation, should be brushed aside to Fitbit's detriment. As a result, Jawbone has not met its burden to show that this Court should impose a stay before ruling on Fitbit's Rule 12(c) motion.

**A.**   **Prematurely Staying This Lawsuit Would Unfairly Delay for Years a Ruling on Fitbit's Rule 12(c) Motion By This Court, Which Is Uniquely Equipped to Decide Threshold Section 101 Issues on the Pleadings**

The first *Landis* factor requires consideration of "the possible damage which may result from the granting of a stay." *Lockyer*, 398 F.3d at 1110. Here, Jawbone has failed to show that a stay of this suit prior to a ruling on Fitbit's Rule 12(c) motion would not be harmful to Fitbit. *See id.* On the contrary, such a premature stay would be damaging to Fitbit because it would delay the resolution of Fitbit's challenge to Jawbone's pleadings, and thereby leave Jawbone's ineligible patent claims hanging over Fitbit's head in this litigation for at least another 2-3 years until the co-pending ITC matter is fully resolved. *See Certain Activity Tracking Devices, Systems, and Components Thereof*, Inv. No. 337-TA-963, Order No. 5 (U.S.I.T.C. Sep. 29, 2015) (setting December 21, 2016 as the target date for the completion of Jawbone's co-pending ITC investigation); *Lelo Inc. v. Int'l Trade Comm'n*, 786 F.3d 879, 881 (Fed. Cir. 2015) (issuing opinion roughly two years after final determination); *InterDigital Commc'ns., Inc. v. U.S. Int'l Trade Comm'n.*, 601 Fed. App'x 972, 976 (Fed. Cir. 2015) (issuing opinion more than one year after final determination).

Jawbone asserts that Fitbit should satisfy itself with presenting its Section 101 defenses in the ITC proceeding using a motion for summary determination. Jawbone's proposal, however, would not be a proper substitute for Fitbit's Rule 12(c) motion in this Court, and would in fact disadvantage Fitbit. As an initial matter, the ITC has not established any kind of track record of adjudicating Section 101 issues. Moreover, in the ITC, there is no procedure to challenge the "pleadings" as there is here. A motion for summary determination in the ITC is akin to a motion for summary judgment under Rule 56 in district court, meaning that the motion is not decided on the pleadings. *See* 19 CFR § 210.18. By contrast, a Rule 12(c) motion in district court is based on a deficiency in the pleadings, and as such requires neither discovery nor claim construction to adjudicate. This is an important distinction, given that the Federal Circuit has endorsed the early resolution by district courts of Section 101 questions on the pleadings. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (Mayer, J., concurring) ("Addressing 35 U.S.C. § 101 at the outset [of a case] not only conserves scarce judicial resources and spares litigants the staggering costs associated with

1   discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits

2   brought by owners of vague and overbroad" patents.).

3          Jawbone does not get to sue Fitbit in multiple forums, and then decide in which of those

4   forums Fitbit should be allowed to assert its defenses.  Given that Jawbone brought this case, Fitbit

5   should be afforded the right to present its challenge to Jawbone's pleadings here, and at this time.

6   Fitbit would be materially worse off by not having its Rule 12(c) motion decided by this Court prior

7   to the entry of any stay.

8   **B.    Jawbone Concedes That Neither Party Would Suffer Hardship or Inequity If This Case**
        **Were to Proceed to a Ruling on Fitbit's Rule 12(c) Motion**

9
10         Under the second *Landis* factor, Jawbone must demonstrate a lack of "hardship or inequity

11  which a party may suffer in being required to go forward" with the case.  *See Lockyer*, 398 F.3d at

12  1110.  Because, as discussed, there is at least "a fair possibility" that Jawbone's requested stay would

13  work damage to Fitbit, Jawbone cannot be entitled to a stay unless it "make[s] out a clear case of

    hardship or inequity."  *See id.* at 1112.

14         Here, not only has Jawbone failed to meet its burden to present a clear case of hardship or

15  inequity, Jawbone affirmatively contends just the opposite—*i.e.*, that neither party would suffer any

16  hardship or inequity in moving forward with this suit.  (Mot. at 7.)  Because there is no dispute that

17  allowing this case to reach an adjudication of Fitbit's Rule 12(c) motion would cause no hardship or

18  inequity to either Jawbone or Fitbit, the second *Landis* factor is not "neutral" as Jawbone contends,

19  but instead mandates strictly against the premature stay that Jawbone requests.  *See Lockyer*, 398

20  F.3d at 1110, 1112; *see also N. Cnty. Commc'ns Corp. v. Verizon Glob. Networks, Inc.*, No. 08-CV-

21  1518 BEN (WMC), 2011 WL 181736, at *3 (S.D. Cal. Jan. 19, 2011) (denying stay in view of failure

22  to prove hardship); *Ayotte v. Am. Econ. Ins. Co.*, No. CV 09-57-BU-RFC-CSO, 2010 WL 1418751,

23  at *3-*4 (D. Mont. Mar. 15, 2010) (same).

24
25  **C.    Judicial Economy Would Best Be Served by Adjudicating Fitbit's Rule 12(c) Motion,**
        **Which May Dispose of Entire Claims in Both This Case and the Co-Pending ITC**
        **Investigation, Prior to Considering a Stay**

26
27         Finally, the interests of judicial economy would best be served if this Court were to rule on

28  Fitbit's pending motion for judgment on the pleadings prior to considering whether to impose any

Gibson, Dunn &
Crutcher LLP

6

stay.  Fitbit's motion, which is based on a threshold issue, will be ready for adjudication once the November 19, 2015, hearing on the motion is conducted.  Additionally, if the Court were to find one or more of Jawbone's claims patent-ineligible, the issues in this case would be greatly simplified, since no other issues relating to those claims—such as infringement, invalidity, or claim construction—would need to be litigated at all.

Moreover, despite Plaintiff's claims to the contrary (*see* Mot. at 7), a decision on Fitbit's motion here would apply equally to the co-pending ITC investigation under settled law.  *See SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 370 (Fed. Cir. 1983) (holding that a ruling by the district court invalidating patents properly modified the scope of the ITC's exclusion order, even pending the appeal of that ruling); *see also In the Matter of Certain Pers. Computs. with Memory Mgmt. Info. Stored in External Memory & Related Materials*, Inv. No. 337-TA-352, Order No. 25, 1994 WL 930225 (U.S.I.T.C. June 6, 1994) (terminating the investigation due to *res judicata*, based on a district court decision still under appeal).  Thus, Fitbit's proposal to delay any consideration of Jawbone's motion for stay until Fitbit's Rule 12(c) motion is adjudicated may eliminate the need to conduct discovery, claim construction, or trial on any patent-ineligible claims not only in this case but also in the ITC investigation.  *See SSIH Equip.*, 718 F.2d at 370; Fed. R. Civ. P. 54(b) ("[T]he court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . ."); *see also Classen Immunotherapies, Inc. v. Elan Pharm., Inc.*, 786 F.3d 892, 896 (Fed. Cir. 2015) (hearing appeal from a district court's Rule 54(b) final judgment with respect to infringement while issues of invalidity remained pending before the district court).  As such, in view of Jawbone's repeated references to its own suit as "duplicative" and Jawbone's suggestion that Fitbit is at fault for the concurrent suits (*see* Mot. at 2, 6, 7 ("Fitbit contemplates duplicative litigation")), taking up Fitbit's Rule 12(c) motion is the most expeditious and efficient way to reduce the burdens on the parties, this Court, and the ITC.

By contrast, imposing a stay prior to a ruling on Fitbit's Rule 12(c) motion would delay the resolution of the Section 101 issues in *any* tribunal, thereby potentially making both this case and the

1   ITC action significantly more complex than if Fitbit's Rule 12(c) motion were not put aside.[3]  Indeed,

2   Jawbone's requested stay would delay resolution of Fitbit's motion for at least 2-3 years while the

3   ITC case remains pending before the ALJ, the Commission, and the Federal Circuit.

4          Notably, Jawbone has the authority to dismiss this suit, but its insistence on an immediate stay

5   suggests that it realizes a dismissal would amount to a concession that it should not have brought this

6   case to begin with.  *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011)

7   (affirming exceptionality finding).  Jawbone asserts that it had the right to "lock in" its choice of

8   venue—*i.e.*, to engage in overt forum shopping.  (Mot. at 8.)  But if that were so, then Jawbone ought

9   to be willing to litigate in this Court, rather than run away from Fitbit's attack on its pleadings.

10  Jawbone also contends that it risked losing out on potential damages due to the six-year lookback of

11  35 U.S.C. § 286.  (Mot. at 8.)  But the oldest patent asserted in this case issued in December 2011

12  (*see* Dkt. 29 Exs. A-F), meaning that Jawbone could have brought suit at least as late as December

13  2017 without losing out on any potential damages.  *See* 35 U.S.C. § 284.[4]  Moreover, Jawbone could

14  have sought a tolling agreement to extend this date even further.  *See Hughes Aircraft Co. v. Nat'l*

15  *Semiconductor Corp.*, 857 F. Supp. 691, 695-97 (N.D. Cal. 1994).

16         In sum, not only has Jawbone failed to show that a stay of this case prior to a ruling on Fitbit's

17  Rule 12(c) motion would further the interests of judicial economy, such a stay would have the

18  opposite effect by preventing a decision on critical threshold issues that has the potential to simplify

19  both of Jawbone's cases against Fitbit.

---

[3]  Moreover, any Section 101 decision in the ITC would have at most persuasive effect in this Court, but would not be preclusive.  *See Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1019 (Fed. Cir. 1987); *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 851 F.2d 342, 344 (Fed. Cir. 1988) ("[T]he ITC's determinations regarding patent issues should be given no res judicata or collateral estoppel effect . . . .").

[4]  Similarly, there was no risk to Jawbone associated with the release dates of the accused products, which were first announced to the public between seven months and three years prior to the filing of this suit.  In particular, Fitbit announced the Aria on April 23, 2012 (*see* Ex. C (Aria Press Release)) (dropped in Amended Complaint), the Zip and One on September 17, 2012 (*see* Ex. D (Zip and One Press Release)), the Flex on January 7, 2013 (*see* Ex. E (Flex Press Release)), and the Charge, Charge HR, and Surge on October 27, 2014 (*see* Ex. F (Charge, Charge HR, and Surge Press Release)).

## V.      CONCLUSION

Jawbone, which brought suit against Fitbit, now seeks unprecedented relief from this Court: a discretionary stay of its own case in favor of parallel proceedings initiated by Jawbone in another forum.  Jawbone, however, has not met its burden to show that a stay of this case, prior to a ruling on Fitbit's threshold motion for judgment on the pleadings under Section 101, is warranted.  As a result, Jawbone' motion for stay should not be considered, if at all, until after the resolution of Fitbit's Rule 12(c) motion.

Dated:      October 16, 2015                      Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By:   _/s/ Frederick S. Chung_
        Frederick S. Chung

GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt
  jkrevitt@gibsondunn.com
200 Park Avenue, 47th Floor
New York, New York 10166
Tel: (212) 351-4000
Fax:  (212) 351-4035

GIBSON, DUNN & CRUTCHER LLP
Wayne M. Barsky
  wbarsky@gibsondunn.com
Jason C. Lo (SBN 219030)
  jlo@gibsondunn.com
2029 Century Park East
Los Angeles, CA 90067-3026
Tel: (310) 552-8500
Fax: (310) 551-8741

FITBIT'S LIMITED OPPOSITION TO PLAINTIFFS' MOTION TO STAY – CASE NO. 3:15-cv-2579

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GIBSON, DUNN & CRUTCHER LLP
Frederick S. Chung
   fchung@gibsondunn.com
Stuart M. Rosenberg
   srosenberg@gibsondunn.com
Neema Jalali
   njalali@gibsondunn.com
Alison Watkins
   awatkins@gibsondunn.com
Quincy Lu
   qlu@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304
Tel:  (650) 849-5300
Fax:  (650) 849-5333

*Attorneys for Defendant*
*FITBIT, INC.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2015, I caused to be electronically filed the foregoing Fitbit's Limited Opposition to Plaintiffs' Motion to Stay with the Clerk of the Court via CM/ECF. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing systems.

Dated:    October 16, 2015                By:  _/s/ Frederick S. Chung_
                                                     Frederick S. Chung