UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIPHCOM, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>FITBIT, INC.,<br><br>　　　　　Defendant. | Case No. 15-cv-02579-HSG<br><br>**ORDER GRANTING MOTION TO STAY**<br><br>Re: Dkt. No. 47 |

Before the Court is a motion, filed by Plaintiffs Aliphcom D/B/A Jawbone and Bodymedia, Inc. ("Jawbone"), to stay this action pending resolution of proceedings before the International Trade Commission ("ITC"). Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, the Court hereby **GRANTS** Jawbone's motion.

**I.    BACKGROUND**

Jawbone instituted this action on June 10, 2015 against Defendant Fitbit, Inc. ("Fitbit"). Jawbone filed the operative complaint on July 3, 2015, asserting infringement of six patents. On July 7, 2015, Jawbone filed a complaint in the ITC, alleging infringement of the same six patents under 19 U.S.C. § 1337.

The ITC instituted the investigation of Jawbone's claims on August 17, 2015. 80 Fed. Reg. 162 (Aug. 21, 2015). The ITC has set a target date of December 21, 2016, for completion of the ITC investigation, and has set several key interim dates, including a *Markman* hearing on December 18, 2015, fact and expert discovery deadlines in January and March 2016, respectively, summary determination motions in March 2016, and initial determinations in August 2016.

On October 2, 2015, Jawbone filed a motion to stay the district court proceedings pending the ITC's decision. Dkt. No. 47. On October 9, 2015, Fitbit filed a Federal Rule of Civil

Procedure 12(c) motion for judgment on the pleadings on the ground that three of the six patents claim unpatentable subject matter under 35 U.S.C. § 101.  Dkt. No. 48.

## II.     ANALYSIS

This motion requires the Court to address a thorny, and apparently somewhat rare, policy dilemma:  should a plaintiff be permitted to invoke this Court's jurisdiction, then seek a stay of its own case in favor of a later-filed proceeding in the ITC?  On one hand, endorsing such a tactic runs the risk of encouraging gamesmanship and forum shopping by plaintiffs.  On the other hand, Congress has expressly recognized the substantial inefficiency inherent in conducting district court and ITC litigation concurrently regarding the same patents, and provided for a mandatory stay of district court proceedings -- but only if the *respondent* seeks the stay.  Jawbone represents, and Fitbit does not contest, that patent defendants routinely invoke the mandatory stay provision without dispute, recognizing the undesirability of simultaneous district court and ITC proceedings. *See Rambus, Inc. v. Nvidia Corp.*, No. C 08-3343 SI, 2008 WL 5427599, at *1 (N.D. Cal. Dec. 30, 2008); *Zenith Elecs. LLC v. Sony Corp.*, No. C 11-02439 WHA, 2011 WL 2982377, at *2 (N.D. Cal. July 22, 2011); *Tessera, Inc. v. Advanced Micro Devices, Inc.*, No. C 05-4063 CW, 2007 WL 3232441, at *2 (N.D. Cal. Nov. 1, 2007); *BenQ Am. Corp. v. Forward Elecs. Co.*, No. C 05-2409 PJH, 2005 WL 3445629, at *1 (N.D. Cal. Dec. 15, 2005); *FMC Corp. v. Summit Agro USA, LLC*, No. CV 14-51-LPS, 2014 WL 6627727, at *4 (D. Del. Nov. 14, 2014); *Solomon Techs., Inc. v. Toyota Motor Corp.*, No. 8:05-CV-1702-T-MAP, 2010 WL 715243, at *1 (M.D. Fla. Jan. 26, 2010).  But here, Fitbit has decided for its own tactical reasons to forgo the stay to which it is entitled, because it hopes this Court will find some of the patents-in-suit void under § 101 before the ITC proceedings run their course.

Recognizing that either course of action has benefits and drawbacks, the Court finds, for the reasons set forth below, that staying this action best promotes the critical values of conserving judicial and party resources and avoiding the highly-problematic prospect of inconsistent rulings regarding identical patents.

### A. Without Dispute, Fitbit Would Be Entitled to a Mandatory Stay Under These Circumstances, if it Chose to Invoke its Right to One

28 U.S.C. § 1659(a) provides that:

> In a civil action involving parties that are also parties to a proceeding before the United States International Trade Commission under section 337 of the Tariff Act of 1930, *at the request of a party to the civil action that is also a respondent in the proceeding before the Commission*, the district court *shall* stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, but only if such request is made within—
>
> (1) 30 days after the party is named as a respondent in the proceeding before the Commission, or
>
> (2) 30 days after the district court action is filed, whichever is later.

(emphasis added).

It is undisputed that this case and the ITC action involve the exact same patents and the exact same issues. Dkt. No. 47 at 3; Dkt. No. 51 at 2. As the respondent in the ITC investigation, Fitbit thus would be entitled to the stay Jawbone requests here as a matter of right. But because Fitbit has opted not to invoke § 1659(a), that provision's mandatory stay does not apply here.

### B. Under These Circumstances, a Discretionary Stay is Warranted

Even though the mandatory stay provision does not apply, the Court also has discretionary power to stay proceedings before it. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

In the Court's view, the most important rationales underlying the mandatory stay provision in § 1659(a) apply with equal force even when a defendant decides for strategic reasons not to invoke the stay, and the Court must keep those rationales in mind in deciding what course of action makes the most sense. *See In re Princo Corp.*, 486 F.3d 1365, 1368 (Fed. Cir. 2007) ("The purpose of § 1659(a) was to prevent infringement proceedings from occurring 'in two forums at the same time.'") (citing H.R. Rep. No. 103–826(I), at 141-42 as reprinted in 1994 U.S.C.C.A.N. 3773, at 3914). And even where, unlike here, the district court and ITC actions do not involve

precisely the same patents and same issues, "Congress explicitly intended that district courts should consider using their discretionary power to stay patent infringement litigation that is related to, but not duplicative of, an action before the ITC." *Zenith*, 2011 WL 2982377, at *2 (citing H.R. Rep. No. 103–826(I), at 141 (after granting mandatory stay under § 1659(a), "[t]he district court may use its discretionary authority to stay any other claims in the action before it")).

Courts consider three factors when determining whether to grant a stay pending parallel proceedings: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). The party seeking the stay bears the burden of proving that it is warranted. *Zenith*, 2011 WL 2982377, at *2. Jawbone has met its burden here.

### 1. Possible damage to Fitbit in granting stay

Fitbit fails to articulate what possible damage would result if a stay is granted. Fitbit asserts generally that not resolving its Rule 12(c) motion before considering the stay motion would harm it by delaying resolution of the § 101 validity challenge until the completion of ITC proceedings two to three years from now. It further contends that granting the stay would allow Jawbone to sue it in multiple forums and then control where Fitbit asserts its defenses.

Fitbit's arguments are unpersuasive. The ITC provides a venue for Fitbit to present its § 101 challenges. *See* 19 C.F.R. § 210.18(b) (authorizing summary determination by the ITC where "there is no genuine issue as to any material fact and that the moving party is entitled to a summary determination as a matter of law"). The standards for judgment on the pleadings before this Court and summary determinations before the ITC are effectively the same and, while it might be somewhat uncommon, it is not unprecedented for the ITC to review § 101 challenges. *See Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 854 F.2d 1327, at *1-2 (Fed. Cir. 1988) (reversing ALJ's determination that claims were invalid under § 101); *Levi Strauss & Co. v. Golden Trade, S.r.L.*, No. 90 CIV. 6291 (RPP), 1995 WL 710822, at *5 (S.D.N.Y. Dec. 1, 1995) (ALJ denied summary determination motion regarding the validity of a claim under § 101); *In the*

4

*Matter of Certain Commc'ns or Computing Devices & Components Thereof*, USITC Inv. No. 337-TA-925 (May 19, 2015) (denying motion for summary determination on claim's invalidity). And by granting a stay, the Court does not deny Fitbit's right to raise a validity challenge in this Court. Instead, the Court will hold Fitbit's motion in abeyance along with the rest of the case. Following the resolution of the ITC proceeding, Fitbit will have an opportunity to be heard before this Court should it so desire.

In addition, although Fitbit generally contends that a delay would be harmful, it fails to adequately articulate that harm. At the hearing, Fitbit stated it was motivated by the "harm that comes from having the cloud of a federal court lawsuit" and the desire "to dispel that cloud at the earliest possible opportunity." Dkt. No. 66 at 10. Courts, however, are generally unwilling to presume delay is harmful without specific supporting evidence. For example, courts have relied on delay as a reason to deny a stay where the plaintiff is seeking injunctive relief and a delay of months or years would allow the defendant to continue infringing a patent, *see LG Elecs., Inc. v. Eastman Kodak Co.*, No. 09-CV-0344H (BLM), 2009 WL 1468703, at *2 (S.D. Cal. May 26, 2009). Similarly, courts have found persuasive the opposing party's argument that a delay will result in the loss of documentary or testimonial evidence, *id*. Here, any generalized risk of delayed litigation is minimized by the fact that the ITC proceeding is moving forward on a comparatively expedited schedule, with trial in May 2016, an opinion to be issued by August 2016, and completion of the investigation by December 2016. Dkt. No. 66 at 14. *See Zenith*, 2011 WL 2982377, at *2 ("A stay should not be granted unless it appears likely that the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court.").

### 2. Possible hardship or inequities Jawbone will suffer if stay is denied

Under the second factor, "if there is even a fair possibility that the stay . . . will work damage to someone else, the party seeking the stay must make out a clear case of hardship or inequity." *Lockyer*, 398 F.3d at 1112 (internal quotation marks omitted).

Jawbone contends that "neither party claims a hardship in moving forward with the litigation, making this factor neutral." Dkt. No. 47 at 7. Fitbit argues that because Jawbone has

1  failed to establish that it would suffer hardship if the litigation were to proceed, the stay should be
2  denied. Dkt. No. 51 at 6. In response, Jawbone contends that where "not staying the case merely
3  requires parties to continue litigating, courts find the second factor neutral." Dkt. No. 47 at 7.

Here, Fitbit has failed to establish a fair possibility of damage if the stay were to be granted. Fitbit can present its § 101 challenges before the ITC and does not lose the opportunity to argue the § 101 motion before this Court, and it has not articulated any other specific harm resulting from delayed litigation in this Court. Moreover, Jawbone does not contend that it would suffer any hardship, separate from having to proceed with the lawsuit, if the stay were denied. *See FormFactor, Inc. v. Micronics Japan Co.*, No. CV-06-07159 JSW, 2008 WL 361128, at *2 (N.D. Cal. Feb. 11, 2008) ("The hardship related to defending a lawsuit is irrelevant when considering whether to grant a stay."). Accordingly, this factor is neutral in the Court's assessment.

### 3.  Simplification of the issues, proof, and questions of law

Finally, Jawbone contends judicial economy weighs in favor of a stay. The ITC proceeding will involve the same issues that this Court will confront (claim construction, invalidity, and enforceability of the patents-in-suit), and Jawbone argues that a stay will minimize the risk of inconsistent results and conserve resources.

The Court strongly agrees. The six patents before this Court are all the subject of the ITC investigation. In the ITC investigation, discovery is underway and set to be completed in early March 2016. Based on the schedule provided to the Court by the parties, a *Markman* hearing already should have taken place in mid-December. By comparison, the action before this Court is in its very early stages. The operative complaint was filed five months ago. The parties have not engaged in discovery, and the Court has not set a scheduling order identifying dates for claim construction, let alone a trial. And although this Court is not bound by the ITC's determination, this Court would benefit from its final decision, because "issues resolved in the ITC hearing will 'bear upon the highly technical . . . questions which are likely to arise in the district court case,'" *FormFactor*, 2008 WL 361128, at *2-3 (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). The ITC's consideration of issues relevant to this case thus will inform, and likely narrow, the scope of the issues to be decided here. *See id.* at *2. *See also* H.R. Rep. No. 103–826(I), at

6

141-42 (explaining that the record developed in the proceeding before the ITC may be used to "expedite proceedings and provide useful information to the court"). As a practical matter, the Court agrees with Jawbone that the ITC proceeding is likely to substantially advance the resolution of the parties' entire dispute.

Fitbit contends that judicial economy requires the Court to first resolve the Rule 12(c) motion regarding validity under § 101. Fitbit argues that the motion pertains to a threshold issue that does not require discovery nor claim construction, and that if the Court finds one or more of the claims patent-ineligible, there will be no issues to litigate as to those claims. It further contends that the district court's decision would have preclusive effect in the ITC's investigation, building efficiencies for the ITC. *See In the Matter of Certain Pers. Computers with Memory Mgmt. Info. Stored in External Memory & Related Materials*, USITC Inv. No. 337-TA-352 (June 6, 1994) ("[R]es judicata principles are generally applicable to section 337 investigations."). But as discussed, Fitbit can raise its § 101 challenge before the ITC at any time; indeed, Fitbit does not contest this. *See* Dkt. No. 66 at 11. The Court also finds unpersuasive Fitbit's suggestion that the ITC's Administrative Law Judge, while able to review "issues of validity, infringement, enforceability and the like," lacks the experience to review § 101 challenges. *See id.*

The inevitable risk of inconsistent rulings further, and fatally, undermines Fitbit's judicial economy claims. Should this case proceed alongside the ITC investigation, there is a strong possibility that the same patents will be interpreted differently, potentially creating inconsistent claim construction rulings, conflicting validity and enforceability determinations, and piecemeal litigation. When asked at the hearing what could be done to minimize these risks, the most Fitbit's counsel could offer was "close communication with both this Court and the commission and collaboration among professional counsel to make sure we get ahead of those issues," and he candidly acknowledged the obvious fact that there likely is no "magic bullet" that completely eliminates these risks. Dkt. No. 66 at 13. The Court will go further: it is beyond reasonable dispute that proceeding with this action at the same time as the ITC action will likely produce a number of factually and legally inconsistent rulings regarding the identical patents at issue in both forums. This factor accordingly supports a stay.

7

### III. CONCLUSION

For all of these reasons, the Court exercises its discretion to stay this action pending resolution of the ITC proceeding. *See FormFactor*, 2008 WL 361128, at *3; *Avago Techs. U.S. Inc. v. IPtronics, Inc.*, No. 5:10-CV-02863-EJD, 2013 WL 623042, at *2-3 (N.D. Cal. Feb. 15, 2013). Jawbone's motion is accordingly **GRANTED**. Fitbit's motion for judgment on the pleadings, Dkt. No. 48, will be held in abeyance during this time. The parties shall file a joint status report within five days of the issuance of the ITC's decision, informing the Court of the decision. At that time, the Court will issue an order addressing further proceedings in the case. Because the ITC proceeding and this case involve identical patents, and because the parties have already agreed to coordinate discovery and consider measures such as cross-designation of testimony, *see* Dkt. 66 at 4, the Court would expect this case to proceed on an expedited basis after the ITC matter ends.

**IT IS SO ORDERED.**

Dated: 12/30/2015

HAYWOOD S. GILLIAM, JR.
United States District Judge